CITY OF BOSTON *vs.* WILLIAM A. SIMMONS & another.

Suffolk.  November 12, 1889. — January 2, 1890.

Present: DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Agency — Public Officer — Fraud — Joint Tortfeasors — Conspiracy — Declaration — Demurrer.*

A declaration, in an action by a city against a former chairman of its water board and another person, alleged that the board was authorized to buy land for the city for a reservoir; that the chairman, of whose position, knowledge, and authority the other defendant had knowledge, knew and shared in determining the action of the board regarding the purchase; that both together, taking advantage of this and intending to defraud the city, corruptly agreed that the chairman should impart to the other the doings of the board in selecting the land and the parcel it considered fit for a reservoir site, whereupon such other was to become the purchaser; that the board should afterwards buy it at an advanced price from him, and that the profits should be divided between them; that in pursuance of this agreement the chairman revealed the particular lot thought suitable by the board to the other, who thereupon bought it, and the board, influenced by the chairman, subsequently purchased it from him at an advance; and that the two divided the profits of the transaction. *Held,* that the declaration disclosed a good cause of action against both defendants for the injury sustained by the city.

TORT.  The declaration was as follows:

" And the plaintiff says that at the time of the acts and doings hereinafter set forth it was, and now is, a municipal corporation duly established by law, in the county of Suffolk, in this Commonwealth, and was duly authorized by law to purchase land on which to construct a reservoir to be used in supplying said city and its inhabitants with pure water.

" That the defendant Simmons was a member and the chairman of the Boston Water Board, a board duly established by law, and authorized and empowered to purchase for the plaintiff land to be used for the purpose aforesaid. That said Simmons, by virtue of his said official position, knew and had a part and share in determining the action of said Water Board, under said authority, in making such purchase; that said defendant Wilson well knew of said position, knowledge, and authority of said Simmons; and that said defendants corruptly took advantage of such position, knowledge, and authority, and, intending and contriving to cheat and defraud the plaintiff, did corruptly and fraudulently conspire and agree with each other that the said Simmons should impart to said Wilson knowledge of the doings of the said Water Board in the selection of said land, and of the piece of land which said board should consider suitable for a site for said reservoir, did conspire and agree that said Wilson should become the purchaser and owner of the lot of land which should be so considered suitable for a site for said reservoir, did conspire and agree that said Water Board, acting for the plaintiff, should purchase the said land for the plaintiff from said Wilson, at an advance or increase above the price paid therefor by said Wilson, and did so conspire and agree to divide the profits of said transaction between themselves.

" And the plaintiff further says, that in consequence and pursuance of said corrupt and fraudulent conspiracy and agreement, said Simmons did impart to said Wilson said knowledge, and that said Water Board had considered a certain lot of land suitable for a site for said reservoir (which said Water Board had in fact done); that said Wilson did thereupon purchase said lot of land (more particularly described in a certain deed thereof to the plaintiff which will be produced if required), and thereafter said Water Board acting in behalf of the plaintiff, being thereto influenced and induced by said Simmons, did purchase said land for said city, of said Wilson, and did cause said city to pay therefor the sum of $91,934, being in excess over the sum paid therefor by said Wilson, and over the price at which said Water Board could have purchased the same but for said corrupt and wrongful agreement and acts of said defendants, and said purchase by said Wilson, by the sum of $50,488. And

said defendants did divide the profits of said fraudulent trans-
action between themselves.

"And the plaintiff further says, that by said corrupt and
fraudulent conspiracy, agreement, and acts of said defendants,
the plaintiff was unjustly, unlawfully, and wrongfully deprived,
defrauded, and cheated of said sum of $50,488."

The defendant Wilson demurred to the declaration, on the
ground that it did not set forth a legal cause of action.

The Superior Court sustained the demurrer, and ordered
judgment for the defendants; and the plaintiff appealed to
this court.

*S. J. Thomas & A. Russ*, (*D. A. Dorr* with them,) for the
defendant Wilson.

*A. J. Bailey*, for the plaintiff.

DEVENS, J. The averment of a conspiracy in the declaration
does not ordinarily change the nature of the action, nor add to
its legal force or effect. The gist of the action is not the con-
spiracy alleged, but the tort committed against the plaintiff, and
the damage thereby done it wrongfully. Where damage results
from an act which, if done by one alone, would not afford ground
of action, the like act would not be rendered actionable because
done by several in pursuance of a conspiracy. *Wellington* v.
*Small*, 3 Cush. 145. *Parker* v. *Huntington*, 2 Gray, 124. *Hay-
ward* v. *Draper*, 3 Allen, 551, 552. . *Randall* v. *Hazelton*, 12 Al-
len, 417. *Bowen* v. *Matheson*, 14 Allen, 499. On the other hand,
when the tort committed and the damage resulting therefrom
proceed from a series of connected acts, the averment that they
were done by several in pursuance of a conspiracy does not so
change the nature of the action, that, if the wrongful acts are
shown to have been done by one only, it cannot be maintained
against him alone, and the other defendants exonerated. As it
would be necessary in the case at bar, in order that both de-
fendants should be held responsible, to prove a combination and
united action on their part, the allegation of a conspiracy is a
convenient and proper mode of alleging such combination and
action. For any other purpose it is wholly immaterial.

The declaration to which the defendants have demurred, and
the allegations which we must take for the purpose of this hear-
ing to be true, omitting the expletives by which they have been

characterized, are that Simmons was a member of the Water Board of the city of Boston, which board was empowered and authorized to purchase for the city land for the purpose of constructing a reservoir; that he knew and had a share in determining the action of the board in making such purchase, and, further, that Wilson had knowledge of the position, knowledge, and authority of Simmons; that together, taking advantage of this, and intending to defraud the plaintiff, it was agreed corruptly between them that Simmons should inform Wilson of the doings of the board in the selection of the land and of the piece which they should consider suitable for a site for said reservoir; and that they further agreed that Wilson should become the purchaser of this lot, that it should afterwards be purchased by the board at an advanced price, and that the profits should be divided between themselves. The declaration further avers, that, in pursuance of this agreement, Simmons did impart to Wilson that the board had considered a particular lot suitable for a reservoir; that it was then bought by Wilson; that thereafter the board, influenced by Simmons, did purchase this land for the city at an advanced price from Wilson; and that Wilson and Simmons divided the profits of the transaction.

If this whole transaction, as described by the declaration, had been conducted by Simmons alone, without aid from or intervention of Wilson, — if, knowing the determination of the board that the lot in question was suitable for the purpose, he had himself purchased it, and then, availing himself of his influence with the board, had induced it to purchase the lot from him at an advanced price, — he certainly would have been liable to the city for the injury occasioned by this abuse of his trust. He was one of the officials of the city, acting on its behalf, bound to act in good faith, to make a proper selection of the lot for a reservoir, and to purchase it at the most reasonable price. *Walker* v. *Osgood*, 98 Mass. 348. *Cutter* v. *Demmon*, 111 Mass. 474. *Rice* v. *Wood*, 113 Mass. 133, 135. To purchase himself the lot of land which he knew the board of which he was a member had considered suitable, with a view to compel it to pay an advanced price therefor, and thereafter to avail himself of his influence with the board to have this advanced price actually paid, and thus to obtain a profit, would be a vio-

lation of the duty he owed to the city and a wrong done to the city for which it should be entitled to a remedy. The fact that he acted according to the averments of the declaration in connection with another party, presumably that his relation to the purchase might not appear and his influence be thus destroyed, does not diminish his own responsibility; while the other, who participated in the scheme, and who has knowingly aided and abetted in the transaction, and shared its profits in pursuance of their agreement so to do, becomes a wrongdoer with him. *Adams* v. *Paige,* 7 Pick. 542, 550. *Emery* v. *Hapgood,* 7 Gray, 55, 58. *United States* v. *State Bank,* 96 U. S. 30, 35.

It is said on behalf of Wilson, that nothing had been done towards the purchase of the lot when Simmons imparted to him the information; that the allegation that the board had considered the lot in question as suitable for the reservoir, is not an allegation that anything was actually done towards its purchase; that Wilson might elsewhere have obtained information that the members of the board were talking of buying the lot; that this conversation gave them no right in it; that the owner could still properly sell to whom he pleased; and that Wilson had the same right to purchase that any one has who buys an estate in anticipation of future uses which will make it more valuable.

While it is true that one may avail himself of his own judgment, or of information properly obtained, to purchase land in anticipation of its rise in value, it is quite a different question whether one who knows another to be acting for a principal who desires to purchase a piece of land may, on receiving information of this from the agent, purchase the land himself, upon an arrangement with the agent that he will use his efforts to induce the principal to complete the purchase at an advanced price, and then divide the profits with him. The abuse of trust of which the agent is guilty with his knowledge and co-operation is a wrong for which both are liable, as the injury to the principal is the result of their combined action. Where an agent purchased property for his principal, and falsely represented that he had paid for it a larger sum than he had actually paid, it was held that he would be liable for such overplus. There is no reason why one who has intentionally co-operated

with him, and has enabled him to commit the fraud, should not be equally liable. *McMillan* v. *Arthur*, 98 N. Y. 167. The owner or *cestui que trust* may pursue the trust funds into whosesoever hands they may have passed, so long as they can be traced and knowledge of their character can be brought home to the possessor. Not less should the principal, who has been wronged by the misconduct of its own agent, be allowed to pursue, not merely him, but those who have actively co-operated in his breach of duty, and accepted their share of the profits of the transaction.

It is not important that the board, when, as it is alleged, Simmons informed Wilson that it had determined that the lot was a suitable one for the reservoir, does not appear to have then finally decided to take it, or that Simmons alone could not have compelled them to take it. He had no right to confide to another the result of the deliberations of the board so far as they had progressed. If he did so, and if, with full knowledge on the part of both, the two entered into an agreement that Wilson should then purchase and hold the land for an advanced price, to be divided between them if the operation should prove successful, while Simmons should use his influence with the board of which he was a member to have it purchased at the advanced price, an agreement was made to commit a fraud upon the city. If the allegations made shall be proved, and if the fraud shall have been consummated by means of the information imparted by Simmons, the purchase made by Wilson, and the influence of Simmons with the board, which were all parts of the same plan, the defendants are alike liable for the injury which the city has sustained.

*Demurrer overruled.*