LUND, Respondent, vs. KEELER, Appellant.

*November 13, 1930—February 10, 1931.*

460

*Arthur T. Holmes* of La Crosse, for the appellant.

For the respondent there was a brief by *Higbee & Higbee* of La Crosse, and oral argument by *Jesse E. Higbee*.

The following opinion was filed December 9, 1930:

FOWLER, J. (1) That the defendant breached his contract with plaintiff by failing to deliver the stock to her within reasonable time and by negligently allowing the stock purchased to stand as security for his own account with his Chicago broker for so long a time, is apparent. It is also apparent that were the contract between plaintiff and defendant one of sale or for sale by defendant to plaintiff of the stock, these breaches would entitle plaintiff to rescind, as she attempted to do, and entitle her to recover the $2,100 paid to plaintiff. But, although the contract might at first blush seem to be one of sale, it was not such but one of agency. It was a very simple contract. In the first instance the defendant's agreement and obligation were to order the stock to be purchased for plaintiff on margin. This he did. There was no breach of the original contract. Later, on plaintiff's election to purchase outright and her full payment, defendant's agreement and obligation were to procure for delivery to plaintiff with reasonable promptitude the stock which he had already procured to be purchased for her. This contract the defendant breached in two particulars, by negligently failing to procure the stock for delivery to her promptly and, negligently, but not wilfully or intentionally, permitting it to be held by the Chicago broker as security for his own account. The defendant's breaches might well have entitled plaintiff to cancel her order for delivery of the stock to her at any time before the defendant's order to the Chicago broker to have the stock issued in plaintiff's name and delivered to him for her had been put in process of execution by him. She could have done

so on February 20th or any time prior thereto. But she could not cancel or rescind the original purchase of the stock. What was done in that respect could not be undone. The stock when purchased became her stock. It was held by the Chicago broker ostensibly for the defendant but in equity for her in fact. Had plaintiff dealt with defendant on the understanding that her contract with him was one of purchase and sale we would have another question. But she knew the contract was of mere agency. She paid him a $10 commission for executing her order. She knew the stock had been purchased for her and was held for her in the first instance, and fully understood, when she elected to purchase it outright, that it was to be ordered to be issued in her name and delivered to her, and supposed when she went for it on February 20th that she would then receive it. In this situation her only recourse against the defendant was an action for damages for breach of his contract by negligence resulting in delay, but in such case her measure of damages would be the loss sustained by reason of the delay in procuring delivery of the stock, if any there was. The evidence does not show what her such loss, if any, was, and there is no basis for recovery on that ground.

(2) Plaintiff's counsel suggest that the defendant converted the stock by permitting it to remain as security for his own account. But as above stated, his conduct in this regard was not intentional or wilful. It was only negligent. He breached his contract. But neither negligence, active or passive, nor mere breach of contract, although it results in loss of property, constitutes conversion. 38 Cyc. p. 2008; 26 Ruling Case Law, p. 1112. There must be intent to convert the property to one's own use or at least some other wrongful intent indicative of assumption of ownership of or dominion over the property. 26 Ruling Case Law, p. 1111. This case is entirely wanting in evidence of such intent. The evidence is all to the contrary. It appears that

defendant fully protected the stock by his remittance of $4,000 on January 22d; that he directed delivery of it on January 26th, and inadvertently neglected to see that his direction was received and carried out; and that his account was such at all times after his $4,000 remittance that directions for delivery would have been carried out at any time they had been received, as they eventually were when received. This negatives any intent to convert the stock to his own use. Defendant's every act was consistent with and in furtherance of the plaintiff's rights and ownership. Neither the complaint nor the trial court's decision goes on the theory of conversion. There was no finding of conversion. And there was no conversion.

(3) We have discussed the case thus far without reference to the cases cited in the briefs of counsel on either side as to the duties of a stock-broker. Those duties plainly are as contended by plaintiff's counsel in their brief. They are tersely stated as follows:

"Several propositions seem to be well settled: (1) That, as between a broker and a customer who had paid for stock in full, the latter is the owner of the stock, and does not impliedly authorize the broker to pledge the security. As to the full-paid customer, the pledging of this stock by the broker is wrongful (*In re J. C. Wilson & Co.* (D. C.) 252 Fed. 631). (2) That, as between a broker and a marginal customer, the latter is also the owner of the stock, and the broker is a pledgee (*Richardson v. Shaw*, 209 U. S. 365, 28 Sup. Ct. 512, 52 Lawy. Ed. 835, 14 Ann. Cas. 981; *Thomas v. Taggart*, 209 U. S. 385, 28 Sup. Ct. 519, 52 Lawy. Ed. 845), and has a lien on the stock for any advances he may make thereon, and has the implied consent of the owner lawfully to repledge the same (*In re J. C. Wilson & Co., supra*). (3) That, as between the broker and his cash customer, the latter is entitled to the immediate delivery of the stock (*Duel v. Hollins*, 241 U. S. 523, 36 Sup. Ct. 615, 70 Lawy. Ed. 1143), and the marginal customer is entitled to the delivery when he pays the balance of the contract price (*In re Mason* (C. C. A.) 282 Fed. 202)."

A more detailed statement may be found in *Richardson v. Shaw*, 209 U. S. 365, 28 Sup. Ct. 512, 52 Lawy. Ed. 835. But there is nothing in the statements there made in derogation of or conflict with the disposition of the case above indicated.

No costs will be allowed appellant because of failure of his counsel to preface his brief with a synopsis of the argument, as required by Rule 9. The index to the Case was also faulty for not indicating the character of the exhibits as required by Rule 7.

*By the Court.*—The judgment is reversed, with directions to dismiss the complaint.

A motion for a rehearing was denied, with $25 costs, on February 10, 1931.